OPINION OF THE COURT
Bellacosa, J.
The appellant former husband presents a single statutory interpretation question for this Court to settle — whether a separation action ends the period for the accrual of marital property as prescribed by Domestic Relations Law § 236 (B) (1) (c). The Appellate Division, agreeing with Supreme Court, held that the start of the separation action did not effect that end. We, too, conclude that a separation action does not, ipso facto, terminate the marital economic partnership and, therefore, does not preclude the subsequent accrual of marital property.
FACTS
The parties to this action were married in 1954 and have three children. In 1982, the wife brought a separation action against her husband, which was contested and did not go to trial until January 1988. In 1983, the wife was granted exclusive use and possession of the marital residence, temporary maintenance, and temporary child support. At times, after the separation action was commenced, the parties continued to live in the marital residence together and filed joint tax returns. Two years after the separation action was com *555 menced, they also travelled to Tennessee together. Following trial of the separation action, at which the amount and duration of maintenance were the only contested issues, the wife was granted maintenance and a judgment of separation was entered on October 20,1988.
In 1989, the wife commenced an action for divorce, pursuant to Domestic Relations Law § 170 (5). The husband sought an order declaring that assets acquired after the commencement of the 1982 separation action were not marital property. The wife cross-moved to set the much later date of the commencement of the divorce action as the cutoff, after which property acquired would not be considered marital property.
Supreme Court, Albany County, noting the divided views of the various Appellate Divisions on this narrow but critically important point of law, fixed the commencement date of the divorce action as the marital asset accrual cutoff date. The Appellate Division, Third Department, agreeing with Supreme Court and the views of the First and Fourth Departments on this issue, affirmed by a vote of 3 to 2. The Appellate Division then granted permission to the husband to appeal to this Court on a certified question.
DISCUSSION
The Domestic Relations Law and its equitable distribution regime are complex, interlocking statutory frameworks. As this Court recently observed in Matter of Aaron J. (80 NY2d 402, 407), we are obliged in interpreting such statutes to "harmonize the various provisions * * * and to construe them in a way that renders them internally compatible”. In a subdivision captioned "Definitions”, Domestic Relations Law § 236 (B) (1) (c) states that "[t]he term 'marital property’ shall mean all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action” (emphasis added). Nowhere in the subdivision captioned "Definitions” is the term "matrimonial action” defined.
Appellant urges a plain meaning approach to the understanding and application of Domestic Relations Law § 236 (B) (1) (c). He maintains that by the "clear definitional language”, a matrimonial action must include a separation action and he points to the reasoning of the Second Department in Lennon v Lennon (124 AD2d 788), which stands alone against the contrary views of the other three Appellate Division Depart- *556 merits. The Second Department relied on a discrete subdivision of the same statute, Domestic Relations Law § 236 (B) (2), captioned "Matrimonial actions”, which lists 11 types of matrimonial actions, and used that enumeration as an aid to defining "matrimonial action” for purposes of the marital property definition provision, Domestic Relations Law § 236 (B) (1) (c). Because an action for separation is included in the Domestic Relations Law § 236 (B) (2) list, appellant, the Lennon Court and the dissent base their further analysis on the predicate that the mere delineation in section 236 (B) (1) (c) is self-defining and self-executing.
Their plain meaning approach, however, fails to give sufficient consideration to the fact that also included in the Domestic Relations Law § 236 (B) (2) list of "[m]atrimonial actions” are actions that could not possibly serve as the cutoff point for the accrual of marital property. For example, the list includes actions "for a declaration of the * * * nullity of a foreign judgment of divorce [and] for a declaration of the validity * * * of a marriage” (Domestic Relations Law § 236 [B] [2]). The objective of these actions, as Justice Levine convincingly observed in his majority opinion below, is "a judicial declaration of the continued existence of the marital relationship” (Anglin v Anglin, 173 AD2d 133, 135 [emphasis in original]). If one of these actions, by the so-called plain meaning "matrimonial actions” litany, were held to demarcate the end of the marital property accrual period, an inexplicable contradiction would be plainly evident.
Thus, "matrimonial action” for the purpose of defining the termination point for the further accrual of marital property cannot be governed by an overly inclusive and generalized list but must instead acquire its meaning in relation to the overall legislative intent of the Domestic Relations Law and within the particular application of the equitable distribution regime. We should not accept or view Domestic Relations Law § 236 (B) (2) as a definitional list for all purposes.
We are aided in the view we adopt by the express terms of section 236 (B) (1) (c), which draws a parallel between a "separation agreement” and "the commencement of a matrimonial action” (emphasis added). Either category serves to demarcate the closing date of the marital property accrual period. The appellant former husband would construe the categories so that either a separation agreement or the commencement of a separation action "objectively signifies the *557 end of the marital partnership” and "clearly signals the end of the economic partnership of the marriage”. That conclusion may not be so facilely accepted. The economic partnership should be considered dissolved when a matrimonial action is commenced which seeks "divorce, or the dissolution, annulment or declaration of the nullity of a marriage”, i.e., an action in which equitable distribution is available (see, Domestic Relations Law § 236 [B] [5]). That provides internal consistency and compatibility and objective verification, as opposed to uneven, ephemeral, personal interpretations as to when economic marital partnerships end. This Court has said that the "winding up of the parties’ economic affairs and a severance of their economic ties by an equitable distribution of the marital assets” — a winding up consistent with the termination of a partnership — is to be carried out "upon dissolution of the marriage” (O’Brien v O’Brien, 66 NY2d 576, 585 [emphasis added]). All separation actions do not actually or realistically constitute the functional or cognizable equivalent of the dissolution of a marital economic partnership or of a marriage itself. Indeed, a separation decree, using somewhat Victorian terms, serves only to "separate] the parties from bed and board, forever, or for a limited time” (Domestic Relations Law § 200 [emphasis added]). Moreover, while a separation judgment may be used as a predicate for divorce (see, Domestic Relations Law § 170 [5]), the law requires another definitive act by a party — a discrete action at law — to legally effectuate the divorce objective and terminate a marriage.
It is pertinent that the Legislature has expressly allowed a separation agreement to fix the cutoff date for accrual and control the distribution of the economic fruits of the marital economic partnership. In effect, the Legislature has allowed parties to "contract out of th[e] system of marital property and maintenance” (see, Member of Assembly Mem, 1980 NY Legis Ann, at 130). Because a separation agreement constitutes a voluntary bilateral mechanism allowing parties to opt out of the statutory equitable distribution regime, the statute places the agreement on a par of materiality and legal effect with the commencement of a qualifying matrimonial action that would legally terminate the marital economic partnership. As Justice Levine aptly noted, "because the spouses have the power to provide for the entire disposition of marital assets in a separation agreement, and commonly do so, it was appropriate and consistent to designate the execution of a separation agreement as an alternative terminating event in *558 defining marital property for equitable distribution purposes in Domestic Relations Law § 236 (B) (1) (c)” (Anglin v Anglin, 173 AD2d 133,136, supra [emphasis added]).
Appellant offers counterarguments that the courts should carefully differentiate between the distribution of marital property under section 236 (B) (5) and the demarcation of its accrual specified in section 236 (B) (1) (c) (see also, Florescue, The Cutoff to Accrual, NYU, Aug. 10, 1992, at 3, col 1). We acknowledge the distinction, but emphasize, too, that this variation does not alone resolve the precise question before us, which is whether the Legislature has chosen a separation action as the cutoff for the accrual of marital property, as prescribed in Domestic Relations Law § 236 (B) (1) (c). Judicial policy preferences are irrelevant and not controlling in answering that question. In the interpretative context, courts are obliged to "harmonize the various provisions” of the statute (Matter of Aaron J., 80 NY2d 402, 407, supra) and, thus, must read the entire law and accord respect to the interlocking and interrelated features of all its parts. Although subdivision (5) of section 236 (B) purports only to govern the equitable distribution of marital property, it nevertheless also provides valuable guidance in the search for what the integrated statute was intended to mean and informs the judicial ascertainment of a solution that gives all parts of the statute consistent and effective meaning (see, Matter of Aaron J., supra; Matter of Society of N. Y. Hosp. v Del Vecchio, 70 NY2d 634, 636; McKinney’s Cons Laws of NY, Book 1, Statutes §§ 97, 98). The specific equitable distribution words and provisions of the Legislature must be accorded appropriate weight in this context and, in our view, they should enjoy precedence over a generalized enumeration provision. By this method and assessment, a real harmonization and effectuation of the purpose intended by the Legislature is accomplished.
Notably, the Legislature has given the courts significant flexibility in fashioning the appropriate remedy of equitable distribution of marital property. The commencement of a separation action may be considered as a factor by courts, among other relevant factors, as they attempt to calibrate the ultimate equitable distribution of marital economic partnership property acquired after the start of such an action by either spouse (see, Anglin v Anglin, 173 AD2d 133, 137, supra). The Legislature has wisely refrained from excluding, arbitrarily and per se, assets acquired subsequent to the commencement of a separation action from the potential pool of accru *559 ing marital property. We have correspondingly noted that the Legislature deliberately defined marital property "broadly”, and we have upheld that "broad construction” (see, Price v Price, 69 NY2d 8, 15; Majauskas v Majauskas, 61 NY2d 481, 489). The rigid formula advocated by the appellant and espoused by the dissent in this purely statutory interpretation case, would incongruously retreat from the flexibility properly reposed in the courts in this sensitive and difficult area. The net result in this case would also be demonstrably unfair.
We have considered all the other arguments presented and conclude they are without merit.
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the negative.
Hancock, Jr., J.