OPINION OF THE COURT
Bellacosa, J.
The named individuals seeking declaratory relief in these two actions are homeless, mentally ill persons. They sue for themselves and on behalf of all persons similarly situated.
The Supreme Court, after a lengthy trial, ruled in favor of plaintiffs, and held that the duties imposed on defendant, New York City Health and Hospitals Corp. (HHC), under Mental Hygiene Law § 29.15, include a duty to implement the individual written service plans of mentally ill patients with respect to adequate and appropriate housing upon their discharge from its hospitals. The Appellate Division affirmed the judgment and granted essentially only HHC leave to appeal from the order upholding the judgment in plaintiffs’ favor against HHC. Thus, for purposes of deciding this matter, the statutory obligations of only defendant HHC are at issue, since the dismissal of the action against the State is not part of the appeal before us.
We now affirm the order of the Appellate Division and hold that, in the context of this case, Mental Hygiene Law § 29.15 imposes these duties on HHC: (1) to prescribe and assist in locating adequate and appropriate housing for about-to-be-discharged mentally ill patients; (2) to discharge them in accordance with the individualized, written, patient service plans which include recommended housing; and (3) to coordinate the effectuation of those efforts among responsible entities. Notably, neither the statute nor the affirmed judgment imposes upon HHC the explicit duty to build, create, supply or fund such housing.
Appellant HHC contends that the courts below have erroneously expanded its statutory duties and have imposed enormous and unintended new fiscal obligations on HHC to build and provide housing for mentally ill persons. Instead, it views its duty essentially as an aspirational, cooperative, joint venture. Conversely, the plaintiffs seek declaratory relief compelling HHC to act as prescribed under the statute, including securing "adequate and appropriate housing” for mentally ill patients upon their discharge from hospitals. In particular, they seek individualized, written discharge service plans and *688 actual discharge in accordance with the specifications of those instructions.
The gist of this consolidated litigation seeking declaratory relief can be properly and best understood by reference to the four corners of the relevant adjudicatory paragraphs of the affirmed Supreme Court judgment:
"ordered, adjudged and declared that the New York City Health and Hospitals Corporation OHHC’) has violated its obligations with respect to discharge planning as set forth in MHL § 29.15 (f),
(g), (m) and (n), and it is hereby directed to comply with such provisions, which includes a duty to see that the residences in which patients discharged from its facilities are living are adequate and appropriate to their needs * * *
"ordered, adjudged and declared that the New York City Department of Mental Health, Mental Retardation and Alcoholism Services has an obligation pursuant to MHL § 29.15 (n) to cooperate with HHC in implementing discharge planning of patients from HHC facilities, and it is hereby directed to perform such obligation”.
Those decrees are derived from Mental Hygiene Law § 29.15, as amended in 1980, which provides in pertinent part that:
"(f) The discharge or conditional release of all clients at developmental centers, patients at psychiatric centers or patients at psychiatric inpatient services subject to licensure by the office of mental health shall be in accordance with a written service plan prepared by staff familiar with the case history of the client or patient to be discharged or conditionally released and in cooperation with appropriate social services officials and directors of local governmental units * * *
"(g) A written service plan prepared pursuant to this section shall include, but shall not be limited to, the following * * *
"2. a specific recommendation of the type of residence in which the patient is to live and a listing of the services available to the patient in such residence * * *
"(m) It shall be the responsibility of the chief *689 administrator of any facility providing inpatient services subject to licensure by the office of mental health to notify, when appropriate, the local social services commissioner and appropriate state and local mental health representatives when an inpatient is about to be discharged or conditionally released and to provide to such officials the written service plan developed for such inpatient as required under subdivision (f) of this section.
"(n) It shall be the duty of directors of local social services districts and local governmental units to cooperate with facilities licensed or operated by an office of the department in the preparation and implementation of comprehensive written services plans as required by this section.” (Emphasis added.)
ANALYSIS
Every part of a statute must be given meaning and effect (see, Anglin v Anglin, 80 NY2d 553, 558; Sanders v Winship, 57 NY2d 391, 396; McKinney’s Cons Laws of NY, Book 1, Statutes §§ 97, 98 [a]; § 231 [1971]), and the various parts of a statute must be construed so as to harmonize with one another (see, Anglin v Anglin, supra; People v Mobil Oil Corp., 48 NY2d 192, 199). Subdivisions (f) and (g) of Mental Hygiene Law § 29.15, when read together, require more than the creation of chart documentation for patients. Memorializing a discharge service plan in writing and delivering it to a mentally ill patient upon discharge from a hospital is not all that the statute commands. Indeed, the mere notation and delivery to patients of a discharge service plan — even one which sufficiently complies with subdivision (g) of the statute, a feature not uniformly or evidently fulfilled upon our particularized examination of this lengthy, detailed record — cannot be treated as satisfaction of the other discrete and complementary duties prescribed under the statute, most notably, subdivision (f). To be sure, the statutory duties may not be as explicit as one might prefer. However, they are plain enough and, as Judge Cardozo stated in another context over 70 years ago, "the whole writing may be 'instinct with an obligation,’ imperfectly expressed” (Wood v Duff-Gordon, 222 NY 88, 91). That, after all, is when judicial interpretation is properly summoned to fill the void or interstice. Moreover, this statute, *690 at its core, "import[s] duty, not discretion” (Jiggetts v Grinker, 75 NY2d 411, 417).
The phrase, "in accordance with a written service plan,” in subdivision (f) contemplates some additional concrete action and responsibility by HHC. In the first instance, it must prescribe adequate and appropriate housing for about-to-be-discharged mentally ill patients, which it must then specify with some particularity in each patient’s discharge plan, and it must assist in the location of such housing and coordinate the effort to bring about the match of the patient to the prescribed housing. In other words, HHC is obligated to give some real legal and practical teeth to this task so that this discrete part of the statutory mandate is not rendered illusory. The position of HHC that compliance with subdivision (g) alone somehow, in effect, suffices, without some affirmative implementing action in accordance with the plans under subdivision (f), cannot prevail.
Our interpretation of the statute comports with and advances the stated policy of New York State to "develop a comprehensive, integrated system of treatment and rehabilitative services for the mentally ill,” which includes "assuring] the adequacy and appropriateness of residential arrangements for people in need of service” (Mental Hygiene Law § 7.01). Additional support for our view can be found in the legislative history of the 1980 amendment. The sponsor of the bill noted that "[t]he purpose of the bill [was] to prevent inappropriate residential placements of psychiatrically frail persons and to ensure that the discharging institutions identify and provide for the service needs of persons unable to live independently in the community” (Mem of Senator Padavan, 1980 NY Legis Ann, at 142). In considering the amendment, the Legislature’s concern was that "[p]atients [were] often placed in facilities that [could not] meet their needs or that provide[d] substandard care” (id., at 143). As noted further in the Governor’s approval memorandum, "[discharge planning is [only] the first step in the successful re-integration of a discharged mental patient into the community” (1980 NY Legis Ann, at 143). Evidently then, the amendment was intended to impose a duty on HHC to prevent inappropriate placements by requiring that patients be discharged "in accordance with” their individual discharge plans. It is noteworthy that the parties have acknowledged that the State’s policy and procedures with respect to discharging mentally ill, homeless patients from its inpatient care exceeds the minimal standards that *691 HHC believes are imposed upon it under Mental Hygiene Law § 29.15.
We conclude, therefore, that the statute requires that HHC take concrete steps to prescribe in the discharge plan the specific type of adequate and appropriate housing necessary for the about-to-be-discharged mentally ill patients; to assist in locating such adequate and appropriate housing before the patients are discharged from inpatient care; to discharge the patients in accordance with their individual written service plans that include the recommended housing; and to coordinate the effectuation of those efforts among the responsible entities.
The trial court acknowledged that "the means by which the statute is to be implemented is left to the agencies involved.” Notably, neither the statute nor the affirmed judgment imposes upon HHC an explicit duty to build, create, supply or fund such housing (see, Governor’s Approval Mem, 1980 Legis Ann, at 143 [recognizing that "the bill will assure that existing resources are used in the most efficient manner possible”] [emphasis added]). This Court’s responsibility is precise and narrow in relation to the key document before us — the judgment. Our reviewing duty is to stay focused on the assessment of the correctness and the breadth of the specific decretal provisions of the judgment, not on the sweep of the articulation of the opinion of the trial court. Indeed, we do not adopt the opinion of Supreme Court and note further that the various interpretations and the commentaries superimposed on the case by the parties are similarly not embraced by our affirmance of the order upholding the judgment. For example, at this stage of this monumental social crisis and of this litigation, we deem it advisable to observe that the injection of the building-of-housing argument as a HHC governmental duty constitutes an overreading of the judgment at issue as affirmed by the Appellate Division and, now, our Court. Courts, after all, must be mindful not to arrogate to themselves a larger authority or remedy than that which lies within judicial and juridical competence. The power and responsibility of courts to interpret statutory duties and to direct compliance with them are large enough tasks by themselves (see, Klostermann v Cuomo, 61 NY2d 525, 531; see also, McCain v Koch, 70 NY2d 109,116).
In sum, we are confident about these features of this important statute that we are obligated to construe insofar as it *692 affects the parties before us, plaintiffs and HHC: the Act requires more than aspirational cooperation and general altruism, and HHC is charged with the duty to effectuate the legislative mandates, as construed by the judgments of the courts. This legislation is not about an abstract societal problem; it is a summons to action in solving this particular part of the homeless crisis, one step and one patient at a time.
The appellant’s other arguments do not materially affect our analysis or the result we reach in this case.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Acting Chief Judge Simons and Judges Kaye, Titone, Hancock, Jr., and Smith concur.
Order affirmed, with costs.