■ MILKA IWANOW, Respondent, v STANISLAW IWANOW, Appellant, and CMS REALTY CORPORATION, Defendant. [834 NYS2d 247]—

In an action, inter alia, for a divorce and ancillary relief, the defendant husband appeals (1), as limited by his notice of appeal and brief, from so much of an order of the Supreme Court, Westchester County (Giacomo, J.), entered February 2, 2005, as granted that branch of the plaintiff wife's motion which was for pendente lite maintenance to the extent of awarding her the sum of $4,000 per month, and denied that branch of his motion which was to dismiss the third cause of action in the amended verified complaint dated August 23, 2004, and (2) from an order of the same court entered April 29, 2005, which denied that branch of his cross motion which was to establish the date for identifying, classifying, and valuing the marital assets to be July 24, 1990.

Ordered that the order entered February 2, 2005 is affirmed insofar as appealed from; and it is further,

Ordered that order entered April 29, 2005 is affirmed; and it is further,

Ordered that one bill of costs is awarded to the plaintiff.

On July 24, 1990 the plaintiff wife commenced an action for a divorce and ancillary relief against the defendant husband. However, that action was voluntarily discontinued by stipulation of the parties. In 2004 the wife commenced this action for a divorce and ancillary relief. In the orders appealed from, the Supreme Court, inter alia, granted that branch of the wife's motion which was for pendente lite maintenance to the extent of awarding her the sum of $4,000 per month, denied that branch of the husband's motion which was to dismiss the third cause of action in the amended verified complaint dated August 23, 2004, and denied that branch of the husband's cross motion which was to establish the date for identifying, classifying, and valuing the marital assets to be July 24, 1990. We affirm.

Contrary to the husband's contention, the award of pendente lite maintenance in the sum of $4,000 per month was a proper accommodation between the reasonable needs of the wife and the financial ability of the husband, giving due regard to the parties' pre-commencement standard of living (see Taylor v Taylor, 306 AD2d 401 [2003]; Goldstein v Goldstein, 303 AD2d 550 [2003]). In general, a speedy trial is the proper remedy for a perceived inequity in a pendente lite award, and modification by an appellate court is rare absent exigent circumstances not here

present (*see Taylor v Taylor, supra; Goldstein v Goldstein, supra*).

The Supreme Court did not err in denying that branch of the husband's cross motion which was to establish the date for identifying, classifying, and valuing the marital assets to be July 24, 1990. Resolution of this issue requires analysis of several interrelated matters.

The husband's cross motion failed to differentiate between two distinct concepts under the Domestic Relations Law, to wit: the date that marital assets cease to accrue, and the date or dates that such assets are valued. Concerning accrual, Domestic Relations Law § 236 (B) (1) (c) provides, in relevant part: "The term 'marital property' shall mean all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action, regardless of the form in which title is held." The Court of Appeals has construed this provision to terminate the accrual of marital property upon the execution of a separation agreement opting out of the statutory equitable distribution regime, or upon the commencement of an action which seeks " 'divorce, or the dissolution, annulment or declaration of the nullity of a marriage', i.e., an action in which equitable distribution is available (Domestic Relations Law § 236 [B] [5])" (*Anglin v Anglin*, 80 NY2d 553, 557 [1992]). The Court of Appeals found that such a rule "provides internal consistency and compatibility and objective verification, as opposed to uneven, ephemeral, personal interpretations as to when economic marital partnerships end," and was consistent with prior holdings that the " 'winding up of the parties' economic affairs and a severance of their economic ties by an equitable distribution of the marital assets'—a winding up consistent with the termination of a partnership—is to be carried out *upon dissolution of the marriage*' " (*id.* at 557, citing *O'Brien v O'Brien*, 66 NY2d 576, 585 [1985]).

Concerning valuation, Domestic Relations Law § 236 (B) (4) (b) provides: "As soon as practicable after a matrimonial action has been commenced, the court shall set the date or dates the parties shall use for the valuation of each asset. The valuation date or dates may be anytime from the date of commencement of the action to the date of trial." In contrast to the relatively clearly defined rules discussed in *Anglin v Anglin (supra)* as to when marital property ceases to accrue, "the trial court has broad discretion in selecting the dates for the valuation of marital assets and, depending on the particular circumstances of the case, may appropriately fix different valuation dates for dif-

ferent assets" (*Kirshenbaum v Kirshenbaum*, 203 AD2d 534, 535 [1994]; *see Daniel v Friedman*, 22 AD3d 707 [2005]). This provision contemplates fact-specific inquiries based on the nature of the asset itself (*see e.g. McSparron v McSparron*, 87 NY2d 275, 287-288 [1995]), and may include consideration of culpable conduct by a party. For example, a court could value an asset as of the date of the commencement of an action rather that at the time of trial, when the value of the asset "significantly decreased after commencement of the action due to wasteful dissipation or other fault of the owner spouse" (*Siegel v Siegel*, 132 AD2d 247, 251 [1987], quoting *Wegman v Wegman*, 123 AD2d 220, 231 [1986]). In sum, the date that marital assets cease to accrue can be, but need not be, the same as the date that some or all of such assets are valued.

Here, although the husband moved to establish the date for identifying, classifying, and valuing the marital assets, the record is inadequate to render a determination as to the classification of the various assets as marital or separate property, or as to the appropriate date or dates for the valuation of the marital property. Indeed, in the main, the parties' arguments concerned whether they had reconciled and continued to receive the benefits of the marital relationship after the wife's 1990 matrimonial action—an inquiry relevant to when marital property ceased to accrue. Consequently, our analysis focuses on this issue.

Where, as here, a prior matrimonial action seeking a divorce and ancillary relief has been withdrawn or discontinued, etc., and a new action for the same relief is subsequently commenced, this Court has engaged in a sui generis inquiry to determine whether the date of commencement of the first action or of the subsequent action should control as the date that marital property ceased to accrue. When the first action is discontinued and the parties either reconcile or continue the marital relationship, and continue to receive the benefits of the relationship, the date of commencement of the subsequent action controls (*see Mesholam v Mesholam*, 25 AD3d 670, 671 [2006]; *Miller v Miller*, 304 AD2d 727, 728 [2003]; *Lamba v Lamba*, 266 AD2d 515, 516 [1999]; *Thomas v Thomas*, 221 AD2d 621, 622 [1995]; *Marcus v Marcus*, 137 AD2d 131, 137-138 [1988]). Here, in order to determine whether this standard has been met, inquiry must be made into the nature of the marital relationship within the context of the statutory scheme for equitable distribution.

The Court of Appeals has held that the statutory scheme for equitable distribution recognizes "that a marriage is, among other things, an economic partnership to which both parties

contribute as spouse, parent, wage earner or homemaker" (*O'Brien v O'Brien*, 66 NY2d 576, 585 [1985]), and that it "reflects an awareness that the economic success of the partnership depends not only upon the respective financial contributions of the partners, but also on a wide range of nonremunerated services to the joint enterprise, such as homemaking, raising children, and providing the emotional and moral support necessary to sustain the other spouse in coping with the vicissitudes of life outside the home" (*Price v Price*, 69 NY2d 8, 14 [1986] [internal quotation marks omitted]). Thus, the focus of the statutory scheme for equitable distribution is on the marriage as an economic unit. When viewed against this model of marriage, the Supreme Court's determination that the parties here reconciled or continued the marital relationship, and continued to receive the benefits of the relationship even after the wife's 1990 matrimonial action, is supported by the record.

It is not disputed that the parties did not engage in sexual relations after 1990. Further, they trade allegations of neglect, abuse, and financial misconduct during the period after the wife's 1990 matrimonial action. However, this is only one aspect of the marital relationship. The parties continued to reside together in the marital home during all relevant periods (albeit in separate rooms) and, for at least a portion of that time, shared the home with all three of their children. Indeed, at the time this action was commenced, the two younger children, neither of whom were then emancipated, still resided at the marital residence. In addition, the parties visited relatives in their native Bulgaria together, staying in apartments they owned there, and, according to the wife, attended other social functions together. Further, and significantly, there is no evidence that the parties made any relevant change to their financial arrangements after the wife's 1990 matrimonial action. Rather, the husband continued to pay all of the family's expenses, including the wife's, and named the wife as a beneficiary in his last will and testament. In addition, the parties filed joint tax returns, shared bank accounts, purchased property together, and managed property together. For example, the wife asserted that she was president of CMS Realty Corporation, which the husband valued at $1.5 million, and had always assisted with the management chores related to the property owned by that corporation. In sum, the economic partnership of the marriage remained intact. That the parties maintained separate rooms and did not resume sexual relations is not controlling for purposes of equitable distribution (*see Pasquale v Pasquale*, 210 AD2d 387 [1994]). Consequently, the Supreme Court providently exercised its discretion in denying the husband's motion to establish the date

that marital assets ceased to accrue as the date that the wife's 1990 matrimonial action was commenced.

The husband's remaining contentions are without merit. Rivera, J.P., Ritter, Goldstein and Angiolillo, JJ., concur.