OPINION OF THE COURT
Katherine A. Levine, J.
*245 This case calls the court to reconcile the seeming anomaly between precedent and the insurance regulations as to what repercussions attach to an insurance carrier’s failure to adhere to the time limits for requesting follow-up verification in no-fault insurance cases. Since the regulations only address the repercussion that attaches to an insurer’s late submission of an additional verification request,[1] and the tenets of statutory construction mandate that different parts of one statute are to be construed together, this court concludes that an insurance carrier should not be subject to greater penalties for submitting a late follow-up verification request than for submitting a late additional verification request.
Plaintiff Pine Hollow Medical, PC., a medical service provider, brings this action pursuant to Insurance Law § 5106 (a) to recover $699.34 for services it provided to its assignor Jonathan Aurelien, for injuries he allegedly sustained in an automobile accident. Defendant Global Liberty Insurance moved for summary judgment on the grounds that plaintiff’s lawsuit was premature since plaintiff failed to comply with defendant’s verification requests. Plaintiff does not dispute defendant’s assertion that it never provided the requested information, but asserts that defendant’s follow-up verification request was late because it was made on the 11th day after 30 days had already transpired since defendant’s first request for verification, in violation of 11 NYCRR 65-3.6 (b).
Aurelien was allegedly injured in an automobile accident and received medical treatment at Pine Hollow on March 23, 2006. Global sent a verification request to plaintiffs attorney for a letter of medical necessity from the referring physician on April 6, 2006. Having received no response, defendant mailed a second verification request dated May 17, 2006, requesting the same letter of medical necessity. It appears that defendant was thus one day late in requesting the follow-up verification.
Pursuant to Insurance Law § 5106 (a) and 11 NYCRR 65-3.5, an insurer is required to either pay or deny a claim for no-fault automobile insurance benefits within 30 days from the date an applicant supplies proof of claim or it will be precluded from offering any defenses at trial. (Mount Sinai Hosp. v Chubb Group of Ins. Cos., 43 AD3d 889, 890 [2d Dept 2007]; see Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d 274, 278 [1997].) An insurer may toll the 30-day period by properly *246 requesting additional verification[2] 3within 15 days from the receipt of the no-fault insurance claim forms (NF-3 or claim form). (Psych. & Massage Therapy Assoc., PLLC v Progressive Cas. Ins. Co., 5 Misc 3d 723 [Civ Ct, Queens County 2004]; 11 NYCRR 65-3.5 [b].[3]) If the “requested verification[ ] has not been supplied to the insurer 30 calendar days after the original request, the insurer shall, within 10 calendar days, follow up with the party from whom the verification was requested” (11 NYCRR 65-3.6 [b]).[4] If the insurer does not receive the verification request after its follow-up request is sent, its time to pay or deny the claim is tolled pending submission of the requested information. “A claim need not be paid or denied until all demanded verification is provided” (New York & Presbyt. Hosp. v Progressive Cas. Ins. Co., 5 AD3d 568, 570 [2d Dept 2004]; Westchester County Med. Ctr. v New York Cent. Mut. Fire Ins. Co., 262 AD2d 553, 554 [2d Dept 1999]). The insurer must pay or deny the claim within 30 days after it receives verification of all relevant information it requested pursuant to its original request for additional information (11 NYCRR 65-3.5 [c]; 65-3.8 [a] [1];[5] Westchester County Med. Ctr. at 554).
In Presbyterian Hosp. in City of N.Y. v Aetna Cas. & Sur. Co. (233 AD2d 431, 432 [2d Dept 1996]) the court found that the follow-up requirements for verification requests, as contained in 11 NYCRR 65.15 (e) (2) (the predecessor to 11 NYCRR 65-3.6
[b] ), must be “strictly construed” so that “when an insurance company has not received ‘verification’ within 30 days after requesting it, [the insurer] must, within the ensuing 10 days, ‘follow up’ with a second request, documenting the second request in the file and notifying the applicant or the applicant’s attorney.” In Presbyterian (supra) the insurer, after not receiv-
*247 ing a response to its request for additional verification, failed to make any follow-up request and merely waited three months until it received the requested records after which it issued a denial. The Second Department found that the 30-day period within which the carrier should have paid or denied the claim had run “ ‘even before verification [was] obtained’, due to the carrier’s ‘lack of diligence in obtaining the verification’ ” (233 AD2d at 433, quoting Keith v Liberty Mut. Fire Ins. Co., 118 AD2d 151, 154 [2d Dept 1986]).
There have been divergent opinions on whether the defendant insurance company must wait until 30 days have expired before sending out the follow-up verification request. In Psych. & Massage Therapy Assoc., PLLC (5 Misc 3d at 724-725), the court found that the regulations do not mandate that the insurer wait 30 days before sending a follow-up request since the time frame of 30 days was a limit to the amount of time an insurer may wait before sending a follow-up request. This expeditious handling of the verification follow up was consistent with the case law and the goals of the No-Fault Law.[6] In Park Slope Med. & Surgical Supply, Inc. v Country-Wide Ins. Co. (19 Misc 3d 1138[A], 2008 NY Slip Op 51063[U] [Civ Ct, Richmond County 2008]), this court adopted the reasoning of Psych. & Massage Therapy Assoc. (supra) and held that defendant is allowed to send a follow-up verification request on the 30th day after the original request for verification.
Based upon the aforementioned precedent, it would appear that since defendant was one day outside the 10-day window period in which it had to mail its follow-up verification request, defendant could not take advantage of the tolling period and hence could not argue that the instant lawsuit was premature. However, unlike the arguments presented in the aforementioned cases, defendant here raises the somewhat novel argument that even if its follow-up verification request was untimely, “such untimeliness is not fatal but would merely reduce the number of days it has to either pay or deny the claim.” Specifically, defendant argues that since it was only one day late in mailing its *248 follow-up verification request, the 30-day time period it had to pay or deny the claim would still begin to run after it received all of the requested verification but would be reduced by one day to 29 days. Defendant does not cite any authority for this proposition.
11 NYCRR 65-3.8 (j) states that “[f]or the purposes of counting the 30 calendar days after proof of claim, wherein the claim becomes overdue . . . , with the exception of section 65-3.6 of this subpart, any deviation from the rules set out in this section shall reduce the 30 calendar days allowed.” Section 65-3.6 (b), as set forth above, governs the follow-up requirements for verification requests if any verification has not been supplied to the insurer pursuant to the additional request.
There appears to be no higher court analysis of what the phrase “with the exception of section 65-3.6” means within the context of ascertaining what repercussions, if any, attach to an insurer’s late submission of a follow-up verification. However, in Westchester County Med. Ctr. v New York Cent. Mut. Fire Ins. Co. (262 AD2d 553 [1999]), the Second Department found that under the old regulations, a follow-up letter that was sent beyond the 10-day window period was timely and that the insured was entitled to the tolling of the 30 days as contained in 11 NYCRR 65.15 (g). Since the plaintiff never responded to the follow-up verification letter, the 30-day period in which defendant had to pay or deny the claim never commenced and defendant’s denial of the claim was not untimely.
There, the defendant received the claim on April 28, 1997, and made a timely demand for additional verification on May 1. Having not received verification within 30 days, the defendant then made a “timely demand” for follow-up verification on June 13. (262 AD2d at 555.) The defendant thereupon denied the claim on June 19. In its brief before the Second Department, the defendant insurer argued that even assuming June 13[7] was the date it mailed the follow-up request, its denial was still timely on the grounds that the regulations (11 NYCRR 65.15 [g] [10]) only addressed the repercussions if the initial *249 (additional) verification request was not timely sent, and then did not require preclusion of the defense but only a reduction of the 30-day period in which the insurer had to pay or deny the claim, after receiving the verification material, by the amount of the delay. Without commenting on defendant’s reasoning, the Second Department found that defendant had submitted a timely follow-up request.
Subsequently, in Liberty Queens Med. v Tri-State Consumer Ins. (188 Misc 2d 835 [Nassau Dist Ct 2001]), the court dealt directly with the apparent inconsistency between the Appellate Division precedent that the verification requirements must be strictly complied with and the regulatory language which provided for an extension of time in which a defendant insurer had to pay or deny a claim based upon outstanding verification pursuant to 11 NYCRR 65.15 (d) (2) and (g) (1) (under the new regulations — 11 NYCRR 65-3.6 [b] and 65-3.8 Q]). There, the defendant insurer made the additional verification request 11 days after receiving the claim and hence was one day late in making the request pursuant to 11 NYCRR 65.15 (d) (2).
The plaintiff argued that because the request for additional verification was untimely, the defendant insurer waived its right to extend the 30-day period and therefore was required to make a determination on the claim within 30 days of the initial submission, citing Presbyterian Hosp. in City of N.Y. v Aetna Cas. & Sur. Co. (233 AD2d 431 [1996]). The Liberty court first distinguished the matter before it from Presbyterian where the court was not required by the facts before it to focus on the “specific issue presented here,” i.e., the tolling provision of section 65.15 (g) (10). (188 Misc 2d at 839.) Therefore, the “broad general language” utilized by the Presbyterian court should not be construed as determinative of how the court should rule upon a one-day delay in complying with the specific regulation before it. (Id.)
Addressing the insured’s “one-day deviation” from the requirement that it send its additional verification request within 10 days, the court found that the purpose of the No-Fault Law — “avoiding prejudice to insureds by providing for prompt payment or disclaimers of claims” — was sufficiently served by “truncating the presumptive 30-day period which the insurer itself would otherwise have to eventually review the proof submitted” as set forth in 11 NYCRR 65.15 (g) (10). (Liberty at 840.) To impose the “draconian result” requested by plaintiff for a “one-day deviation” from the promulgated stan *250 dards would deprive the insurer entirely of its right to obtain and review the needed proof and would “contravene rather than implement the statutory intent.” (Id.)
Based upon the two aforementioned precedents, it is clear that defendant should not be deprived entirely of the opportunity to review and obtain the needed proof by dint of its one-day tardiness in submitting its follow-up request. 11 NYCRR 65-3.8 (j) only addresses the repercussions of an insurer’s failure to request the additional verification within the set time lines, since it expressly excludes section 65-3.6, which discusses follow-up verification requests, and then sets forth that any deviation from the time frame shall reduce the 30 calendar days allowed in which to pay or deny the claim. As such, the regulations do not even contain a punitive provision for an insurer who does not make a follow-up verification request within the 10-day period.
“A statute or legislative act is to be construed as a whole, and all parts of an act are to be read and construed together to determine the legislative intent” (McKinney’s Cons Laws of NY, Book 1, Statutes § 97; Frank v Meadowlakes Dev. Corp., 6 NY3d 687, 691 [2006]) and construed so as to harmonize with one another (Anglin v Anglin, 80 NY2d 553, 558 [1992]). In the interpretative context, a court “must read the entire law and accord respect to the interlocking and interrelated features of all its parts.” (Anglin at 558.) Furthermore, even apparently conflicting provisions of a statute must be reconciled in a manner most consistent with the overall legislative intent. (Statutes § 98; Schulman v Group Health Inc., 39 AD3d 223 [1st Dept 2007].) Finally, the common mandate of statutory construction is to assume that the Legislature “did not intend a patently absurd result.” (Covington v Walker, 307 AD2d 908, 909 [2d Dept 2003]; see Statutes § 145; In re Adamo, 619 F2d 216, 219 [2d Cir 1980].)
It would be patently absurd and contravene the meaning of 11 NYCRR 65-3.8 (j) to impose a more draconian punishment on an insurer who is one day late in requesting follow-up verification than on an insurer who is one day late in requesting additional verification. Since in the latter situation, the only repercussion to the insurer’s tardiness is the diminution in the time it has to issue a denial or pay the claim, it begs all credulity to impose the more drastic remedy of precluding the insurer from even issuing a denial because of its tardiness in requesting follow-up verification. If anything, the aforementioned regula *251 tion imposes no repercussion upon the insurer who is tardy in requesting follow up.
Since defendant has yet to receive any response to its verification requests, its 30-day period in which to deny or pay the claim has not yet commenced and the instant action is premature. In light of the above, it is not necessary for this court to determine whether the defendant’s time to deny or pay the claim, once it does receive the requested information, is diminished by one day.
Defendant’s motion for summary judgment is granted and the case is dismissed.

. As will be explained below, an additional verification request precedes a follow-up verification request under the no-fault insurance regulations.

. The additional verification request is to be distinguished from the initial verification forms (including the claim form or NF-3) which must be forwarded by the insurer to the parties required to complete them within 10 days of receipt of the completed application for no-fault benefits (NF-2).

. This opinion will also cite to the analogous provisions under the old no-fault regulations (old regulations) which were effective through December 31, 2002, since many of the operative cases were brought under the old regulations. The analogous provision to section 65-3.5 (b) under the old regulations is 11 NYCRR 65.15 (d) (1), which provided that an insurer shall request additional verification within 10 days of receiving the prescribed verification forms.

. The analogous provision under the old regulations is 11 NYCRR 65.15 (e) (2).

. The analogous provision under the old regulations is 11 NYCRR 65.15 (g) d).

. However, in Sea Side Med., P.C. v State Farm Mut. Auto Ins. Co. (12 Misc 3d 1127 [Civ Ct, Richmond County 2006]), Judge Sweeney found that the clear language of 11 NYCRR 65-3.6 (b) required the insurer to “follow up with the plaintiff for the verification at least once in the 10-day period specified therein” (id. at 1131). By sending the follow-up verification request only 28 days after the first verification request had been mailed, defendant failed to mail the follow-up request within the 10 days and “the toll occasioned by defendant’s initial requests for verification dissipated ab initio” (id.).

. (See reply brief for defendant-appellant in Westchester, available at 1999 WL 34593237 [briefs and other related documents].) In their briefs, the parties differed as to when the insurer sent the follow-up verification request; the plaintiff contended that it was sent on June 13 while the defendant insurer argued it was sent on June 3. The Appellate Division adopted June 13 as the date that the follow-up verification request was sent and this court will presume that the Appellate Division, after considering all the evidence, properly ascertained the operative date.