Torkin v Susac (2025 NY Slip Op 01835)

Torkin v Susac

2025 NY Slip Op 01835

Decided on March 26, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 26, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
VALERIE BRATHWAITE NELSON
HELEN VOUTSINAS
LAURENCE L. LOVE, JJ.

2022-00180
2022-00403
 (Index No. 70488/17)

[*1]Michael Torkin, appellant-respondent,
v
Heather Susac, respondent-appellant.

Hasapidis Law Offices, South Salem, NY (Annette G. Hasapidis of counsel), for appellant-respondent.
Abrams Fensterman, LLP, White Plains, NY (Robert A. Spolzino, Lisa Colosi Florio, Aaron Zucker, and Jill Spielberg of counsel), for respondent-appellant.

DECISION & ORDER
In an action for a divorce and ancillary relief, the plaintiff appeals from (1) stated portions of a judgment of divorce of the Supreme Court, Westchester County (Nancy Quinn Koba, J.), dated December 1, 2021, and (2) stated portions of an amended judgment of divorce of the same court dated December 23, 2021, and the defendant cross-appeals from the judgment of divorce and the amended judgment of divorce. The amended judgment of divorce, insofar as appealed from, upon a decision of the same court dated July 22, 2021, made after a nonjury trial, inter alia, (1) awarded the defendant a 37% interest in the value of the plaintiff's partnership interest in Sullivan & Cromwell, LLP, (2) awarded the defendant maintenance in the amount of $10,000 per month from August 1, 2021, through the first day of the first month following the sale of the marital residence, and $23,000 per month from the first day of the first month following the sale of the marital residence through July 31, 2027, (3) declined to award the plaintiff a credit for carrying charges on the marital residence from the date of commencement through July 4, 2020, (4) determined that the Michael H. Torkin 2014 Trust was a marital asset to be divided equally between the parties, (5) awarded the defendant the balance of the parties' liquid marital assets, (6) directed the plaintiff to pay basic child support based on a combined parental income of $400,000, and (7) declined to award the plaintiff a credit for college room and board. The amended judgment of divorce, insofar as cross-appealed from, upon an order of the same court (David F. Everett, J.) dated April 5, 2019, denying, without a hearing, that branch of the defendant's motion which was to set aside an agreement of the parties dated December 13, 2016, and upon the decision, determined that the plaintiff's partnership interest in Simpson Thatcher & Bartlett, LLP, was his separate property.
ORDERED that the appeal and the cross-appeal from the judgment of divorce are dismissed, without costs or disbursements, as the judgment of divorce was superseded by the amended judgment of divorce; and it is further,
ORDERED that the amended judgment of divorce is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.
The parties were married on November 4, 2001. There are two children of the [*2]marriage. The parties pursued a collaborative divorce process, and on December 13, 2016, the parties, while represented by separate counsel, signed a "Collaborative Divorce Participation Agreement," an "Interim Agreement," and a "Stop-the-Clock Agreement," whereby the parties agreed, inter alia, that December 31, 2016, would be the commencement date of any future matrimonial action for purposes of determining equitable distribution of the marital assets and liabilities. The collaborative divorce process was unsuccessful, and the plaintiff commenced this action on December 13, 2017. In an order dated April 5, 2019, the Supreme Court denied, without a hearing, that branch of the defendant's motion which was to set aside the "Stop-the-Clock Agreement." After a lengthy trial, a judgment of divorce dated December 1, 2021, was entered. An amended judgment of divorce dated December 23, 2021, was subsequently entered. The plaintiff appeals, and the defendant cross-appeals.
The equitable distribution of marital assets must be based on the circumstances of the particular case and the consideration of a number of statutory factors (see Domestic Relations Law § 236[B][5][d]; Holterman v Holterman, 3 NY3d 1, 7). Those factors include "any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and contributions and services as a spouse, parent, wage earner and homemaker, and to the career or career potential of the other party" (Domestic Relations Law § 236[B][5][d][7]). "A trial court is vested with broad discretion in making an equitable distribution of marital property, and unless it can be shown that the court improvidently exercised that discretion, its determination should not be disturbed" (Jones v Jones, 182 AD3d 586, 588 [internal quotation marks omitted]).
Here, the Supreme Court providently exercised its discretion in awarding the defendant 37% of the value of the plaintiff's partnership interest in Sullivan & Cromwell, LLP (see Novick v Novick, 214 AD3d 995, 998; Klestadt v Klestadt, 182 AD3d 592, 594; Repetti v Repetti, 147 AD3d 1094, 1098). The 37% share, among other things, properly accounted for the defendant's indirect contributions, including that of homemaker and primary caretaker of the parties' two children (see Domestic Relations Law § 236[B][5][d][7]).
As this action was commenced after January 23, 2016, it is governed by certain amendments to the calculation of postdivorce maintenance set forth in Part B of section 236 of the Domestic Relations Law (see L 2015, ch 269, § 4; Novick v Novick, 214 AD3d at 997). Where, as here, the payor's income exceeds the statutory income cap, the court shall determine the guideline amount of postdivorce maintenance by performing the calculations set forth in Domestic Relations Law § 236(B)(6)(c), and then shall determine whether to award additional maintenance for income exceeding the cap by considering the factors set forth in Domestic Relations Law § 236(B)(6)(e)(1) and setting forth the factors it considered (see id. § 236[B][6][d]; Novick v Novick, 214 AD3d at 997).
The duration of postdivorce maintenance may be determined as set forth in an advisory schedule, which, for a 15-to-20 year marriage, is 30 to 40% of the length of the marriage (see Domestic Relations Law § 236[B][6][f][1]). In determining the duration of postdivorce maintenance, whether or not the court utilizes the advisory schedule, the court shall consider the factors listed in Domestic Relations Law § 236(B)(6)(e)(1) and set forth the factors it considered (see id. § 236[B][6][f][2]). The court shall also take into consideration anticipated retirement assets, benefits, and retirement eligibility age of both parties if ascertainable at the time of decision (see id. § 236[B][6][f][4]).
"The overriding purpose of a maintenance award is to give the spouse economic independence, and it should be awarded for a duration that would provide the recipient with enough time to become self-supporting" (D'Iorio v D'Iorio, 135 AD3d 693, 695; see Mahoney v Mahoney, 197 AD3d 638, 639). "The amount and duration of maintenance is a matter committed to the sound discretion of the trial court, and every case must be determined on its unique facts" (Novick v Novick, 214 AD3d at 997 [internal quotation marks omitted]; see Mahoney v Mahoney, 197 AD3d at 640).
Here, considering the relevant factors, including, inter alia, the age of the parties, their [*3]present and future earning capacities, the standard of living the parties established during the marriage, and the equitable distribution of the marital assets, the Supreme Court's award of maintenance was a provident exercise of discretion (see Domestic Relations Law § 236[B][6][e][1]; Novick v Novick, 214 AD3d at 997). Contrary to the plaintiff's contention, he was not entitled to a credit against the prospective award (see generally Domestic Relations Law § 236[B][6]). Further, the court providently exercised its discretion in directing that the plaintiff pay for the defendant's health insurance for the period of maintenance or until she becomes eligible to obtain health insurance through employment (see id. § 236[B][8][a]; Sinnott v Sinnott, 194 AD3d 868, 879; DiLascio v DiLascio, 170 AD3d 804, 808).
Although the plaintiff paid the carrying charges on the martial residence during the pendency of the action, during that time he was responsible for the payment of interim maintenance and child support, including shelter costs (see Domestic Relations Law § 236[B][5-a][a]; [7]), and as part of the collaborative divorce process, the parties agreed, among other things, that they would maintain the financial status quo. Since the plaintiff was obligated to pay interim maintenance and child support, which encompassed the cost of providing shelter (see Iacono v Iacono, 145 AD3d 972, 974), the Supreme Court properly determined that he was not entitled to a credit for his payment of the defendant's share of the carrying costs of the marital residence, which payments were made in lieu of his direct interim support obligations, and for which, in effect, he received a credit (see Westbrook v Westbrook, 164 AD3d 939, 944). Moreover, the record supports the court's determination that the plaintiff used marital funds, in part, to maintain the status quo after the commencement date.
"Property acquired during the marriage is presumed to be marital property and the party seeking to overcome such presumption has the burden of proving that the property in dispute is separate property" (Novick v Novick, 214 AD3d at 999 [internal quotation marks omitted]; see Steinberg v Steinberg, 59 AD3d 702, 704). "Where separate property has been commingled with marital property, for example in a joint bank account, there is a presumption that the commingled funds constitute marital property" (Glessing v Glessing, 212 AD3d 783, 784; see Candea v Candea, 173 AD3d 663, 666). "To overcome a presumption that commingled property is marital property, the party asserting that the property is separate must establish by clear and convincing evidence that the property originated solely as separate property and [was commingled] only as a matter of convenience, without the intention of creating a beneficial interest" (Glessing v Glessing, 212 AD3d at 784; see Renck v Renck, 131 AD3d 1146, 1149).
Here, the Supreme Court properly determined that the plaintiff failed to overcome the presumption that the Michael H. Torkin 2014 Trust (hereinafter the trust) was marital property, since the plaintiff failed to sufficiently trace the source of the funds deposited into the trust and commingled marital assets with assets of the trust (see Glessing v Glessing, 212 AD3d at 784; Ferrante v Ferrante, 186 AD3d 566, 568). As the plaintiff failed to overcome the presumption that the trust was marital property, the court properly determined that the trust was marital property subject to equitable distribution and providently exercised its discretion in directing that it be divided equally between the parties (see Weiss v Nelson, 196 AD3d 722, 725).
The trial court has substantial flexibility in equitably distributing marital property based on what it views to be fair and equitable under the circumstances (see Mahoney-Buntzman v Buntzman, 12 NY3d 415, 420; Gigliotti v Gigliotti, 221 AD3d 864, 865). "[E]quitable distribution does not necessarily mean equal distribution" (Gigliotti v Gigliotti, 221 AD3d at 865 [internal quotation marks omitted]; see Gafycz v Gafycz, 148 AD3d 679, 680). Here, the Supreme Court providently exercised its discretion in determining that the plaintiff should not have depleted approximately 80% of the liquid marital assets to pay the expenses of the collaborative divorce process, but rather, that the expenses should have been paid, in substantial part, with the plaintiff's postcommencement earnings. Accordingly, the court providently exercised its discretion in awarding the parties' remaining liquid assets to the defendant (see Domestic Relations Law § 236[B][5][d]).
The Child Support Standards Act sets forth a formula for calculating child support [*4](see id. § 240[1-b]). In determining the amount of the basic child support obligation, (1) the court must determine the combined parental income; (2) the court must multiply the combined parental income, up to the amount of a statutory cap, by the appropriate child support percentage and prorate such amount in the same proportion as each parent's income is to the combined income; and (3) where the combined parental income exceeds the statutory cap, the court must determine the amount of child support for the amount of the combined parental income in excess of statutory cap through consideration of the factors set forth in Domestic Relations Law § 240(1-b)(f) and/or the child support percentage (see id. § 240[1-b][c]). If the court finds that the noncustodial parent's pro rata share of the basic child support obligation is unjust or inappropriate, it may order the noncustodial parent to pay such amount of child support as it finds just and appropriate and must set forth the factors it considered (see id. § 240[1-b][g]).
Here, the Supreme Court providently exercised its discretion in applying the child support percentage to the combined parental income up to $400,000 based on its consideration of the resources of the parties and the children, the physical and emotional health of the children and their special needs and aptitudes, and the affluent lifestyle during the marriage (see id. § 240[1-b][f]; Miller v Miller, 216 AD3d 1154, 1156; Candea v Candea, 173 AD3d at 665; Beroza v Hendler, 109 AD3d 498, 502). Moreover, under the circumstances of this case, the court providently exercised its discretion in declining to award the defendant a credit against child support for his contribution to college room and board while the children reside at college (see Matter of Deborah R. v Dean E.H., 181 AD3d 447, 447-448; Juhasz v Juhasz, 92 AD3d 1209, 1212).
Domestic Relations Law § 236(B)(1)(c) defines marital property as all property acquired "during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action." "Thus, in the absence of a separation agreement, the commencement date of a matrimonial action demarcates 'the termination point for the further accrual of marital property'" (Mesholam v Mesholam, 11 NY3d 24, 28, quoting Anglin v Anglin, 80 NY2d 553, 556). Nonetheless, the parties to a marriage may "contract out of the [legislative] system of marital property and maintenance" (Anglin v Anglin, 80 NY2d at 557 [alternations and internal quotation marks omitted]; see Savignano v Savignano, 194 AD3d 769, 773), and here, the parties' "Stop-the-Clock Agreement" expressly set the date of the commencement of any future action for a divorce as December 31, 2016, thereby terminating the accrual of marital property as of that date.
"An agreement between spouses which is fair on its face will be enforced according to its terms unless there is proof of unconscionability, or fraud, duress, overreaching, or other inequitable conduct" (McKenna v McKenna, 121 AD3d 864, 865; see Hershkowitz v Levy, 190 AD3d 835, 836). Moreover, "a motion to set aside an agreement between spouses may be denied without a hearing if the agreement is fair on its face" (Hershkowitz v Levy, 190 AD3d at 839 [internal quotation marks omitted]; see O'Malley v O'Malley, 41 AD3d 449, 451). Here, since the "Stop-the-Clock Agreement" was fair on its face and free from, among other things, any fraud, duress, overreaching, or other inequitable conduct, the Supreme Court properly denied that branch the defendant's motion which was to set aside the agreement without holding a hearing (see Hershkowitz v Levy, 190 AD3d at 839).
Where a "determination as to equitable distribution has been made after a nonjury trial, the trial court's assessment of the credibility of witnesses is afforded great weight on appeal" (Tzu Ching Kao v Bonalle, 214 AD3d 922, 924 [internal quotation marks omitted]; see Kamm v Kamm, 182 AD3d 590, 591). Here, the Supreme Court's determination that the plaintiff's partnership interest in Simpson Thatcher & Bartlett, LLP, which was acquired in 2017, was his separate property is supported by the record. Moreover, contrary to the defendant's contention, the court did not err in denying her application to reopen the trial testimony so as to permit her to admit certain evidence.
Accordingly, we affirm the amended judgment of divorce insofar as appealed and cross-appealed from.
CHAMBERS, J.P., BRATHWAITE NELSON, VOUTSINAS and LOVE, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court