## Matter of United Jewish Community of Blooming Grove, Inc. v Washingtonville Sch. Cent. Sch. Dist.

2021 NY Slip Op 34140(U)

November 18, 2021

Supreme Court, Albany County

Docket Number: Index No. 906129-21

Judge: Peter A. Lynch

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

FILED: ALBANY COUNTY CLERK 11/18/2021 02:19 PM
INDEX NO. 906129-21

NYSCEF DOC. NO. 136

FILED: APPELLATE DIVISION - 3RD DEPT - PENDING

NYSCEF DOC. NO. 2

RECEIVED NYSCEF: 11/18/2021

534406

RECEIVED NYSCEF: 11/23/2021

STATE OF NEW YORK
SUPREME COURT                    COUNTY OF ALBANY

_____

In the Matter of

UNITED JEWISH COMMUNITY OF BLOOMING
GROVE, INC., JOEL STERN, As Parent and Natural
Guardian of K.S. and M.S. and R.S. and B.S. and
F.S., Infants under the Age of Eighteen Years,
YITZCHOK EKSTEIN, As Parent and Natural
Guarding of J.E. and C.E. and M.E. and P.E.,
Infants under the Age of Eighteen Years,

                              Petitioners-Plaintiffs,

For a Judgment Pursuant to Article 78 of the Civil
Practice Law and Rules and for Declaratory Relief
Pursuant to Section 3001 of the Civil
Practice Law and Rules


            -against –                              DECISION, ORDER
                                                    and  JUDGMENT
                                                    Index No. 906129-21
                                                    RJI No. 01-21-ST1835
                                                    (Hon. Lynch, J.)


WASHINGTONVILLE SCHOOL CENTRAL
SCHOOL DISTRICT and the
NEW YORK STATE EDUCATION
DEPARTMENT,

                              Respondents-Defendants.

_____

## INTRODUCTION

This is a hybrid proceeding pursuant to CPLR Article 78 and a Declaratory Judgment

action pursuant to CPLR §3001.

1

[* 1]

By Decision and Order dated August 25, 2021, incorporated herein and made a part hereof by reference, this Court granted Plaintiff's motion for a mandatory preliminary injunction. The standard for a permanent injunction is essentially the same as that of a preliminary injunction but requires that the party seeking the injunction prevail on the underlying merits of the case (see Town of N. E. v Vitiello, 159 A.D.3d 766 [2d Dept. 2018]; Town of Brookhaven v. Mascia, 38 A.D.3d 758, 759 [2d Dept. 2007]; Town of Nassau v. Nalley, 52 A.D. 3d 1013 [3d Dept. 2008], lv denied 11 N.Y. 3d 771 [2008]).

Plaintiff moved for summary judgment seeking a declaration that they are entitled to a permanent mandatory injunction, requiring the defendant school district to provide transportation to all children in the district who attend non-public schools on each day that their school is in session, regardless of whether the public schools are open. Defendants oppose the relief requested, claiming that they are only obligated to provide bus transportation on days when the public schools are open.[1] Defendant SED cross-moved for summary judgment to dismiss the complaint.[2]

To the extent that Defendants cite procedural irregularities arising out of Plaintiff's failure to specifically reference the Answer in it's motion and to submit a statement of material facts, the Court will excuse the claimed irregularities (see CPLR § 2001).[3] Clearly, where, as here, all pleadings are e-filed, there is no prejudice arising out of the claim. Moreover, resolution of the issue is a matter of statutory interpretation, and there are no material issues of fact. Hence, a summary determination is appropriate.

---

[1] NYSEF Doc. No. 131 Pinsonnault Aff. ¶ 14
[2] NYSEF Doc. No. 129-132.
[3] NYSEF Doc. No. 123 Rushfield Aff. ¶ 2-4.

[* 2]

## STATEMENT OF FACTS

As aforementioned, the statement of facts in my prior decision are incorporated herein by reference.

The New York State Education Department (SED) has long dealt with the practical issue of providing transportation to non-public school students on days when the public schools are closed. In fact, SED issued the Transportation Supervisor Handbook in 1992 to advise that transportation services were not so required on days when the public schools were closed.[4]

As of 2007, SED continued to publish its Handbook position on its webpage, to wit:

> "School districts and private schools have an obligation to share their calendars and start/dismissal times during the summer months prior to the opening of school. **Public school districts do not have the legal authority to transport to a private school before the start of the public school year.** So if your district opens on September 10th and a private school opens on Sept 5th, you must not provide transportation until Sept 10th. **Public school districts also do not have the legal authority to provide transportation on the legal holidays that the state requires that the public school district be closed.** On other optional holidays and other days a district is closed (conference days, training days, etc), then the public school district may choose to provide transportation to private schools. However, if they decide not to, that intent and information must have been provided to private schools when the calendars and start/dismissal times were shared, prior to the start of the school year. If a public school district did not state their intent not to transport and did not share their calendar, then they would be required to provide the transportation."[5] (emphasis added)

SED's practice under Education Law § 3635, is to limit transportation to only those days when the public schools are open.

---

[4] NYSEF Doc. No. 138 Handbook @ p. 170, ¶ 11, which provides: "**School districts are not required to provide transportation to nonpublic schools on days when public schools are scheduled to be closed**" (emphasis added); see also, NYSEF Doc. No. 12 - Coughlin Affidavit ¶ 4-5.

[5] NYSEF Doc. No. 109. See also NYSEF Doc. No. 110.

3

[* 3]

Education Law § 3635 (2-a) specifically allows for up to five (5) to ten (10) days of transportation to non-public schools, when public schools are closed. In the legislative history, a similar restriction of two (2) days for all other districts was struck from the legislation.[6] No such restriction is expressed under Education Law § 3635 (1) (a), which is at issue herein.

Plaintiff's have not submitted any cognizable proof of monetary damages.

## SUMMARY JUDGMENT

In <u>Zuckerman v. New York</u>, 49 N.Y.2d 557, 562 [1980], where the Court held,

> "To obtain summary judgment it is necessary that the movant establish his cause of action or defense 'sufficiently to warrant the court as a matter of law in directing judgment' in his favor (CPLR 3212, subd [b]), and he must do so by tender of evidentiary proof in admissible form. On the other hand, to defeat a motion for summary judgment the opposing party must 'show facts sufficient to require a trial of any issue of fact' (CPLR 3212, subd [b]). Normally if the opponent is to succeed in defeating a summary judgment motion, he, too, must make his showing by producing evidentiary proof in admissible form. The rule with respect to defeating a motion for summary judgment, however, is more flexible, for the opposing party, as contrasted with the movant, may be permitted to demonstrate acceptable excuse for his failure to meet the strict requirement of tender in admissible form." (internal quotations and citations omitted)."

Recognizing that summary judgment is a **"drastic remedy"** the "facts **must be viewed in the light most favorable to the non-moving party (see** <u>Vega v Restani Constr. Corp.,</u> 18 N.Y.3d 499, 503 [2012]) (emphasis added). The Court's function is "**not to determine credibility**, but whether there exists a factual issue, or if arguably there is a genuine issue of fact" (see <u>S. J. Capelin Associates, Inc. v. Globe Mfg. Corp.</u>, 34 N.Y.2d 338, 341 [1974]); see also <u>Sillman v. Twentieth Century-Fox Film Corp.</u>, 3 N.Y.2d 395, 404 [1957] where the Court held, **"issue-finding, rather than issue-determination, is the key to the procedure"** (emphasis added).

---

[6] NYSEF Doc. No. 38, p. 18.

[* 4]

Here, there are no material facts at issue. The issue is limited to the interpretation of the provisions of Education Law § 3635, and, as an issue of law only, summary determination is appropriate.

In this Court's view, it is fundamental error to assume that the identification of SED's transportation practice is equivalent to a determination of the legislative mandate under Education Law § 3635 (1) (a). To the contrary, the record shows that SED has long implemented a self-serving practice, in derogation of its statutory obligation, all as more fully appears below.

Education Law § 3635 provides, inter alia:

> **1.**
> **a. Sufficient transportation facilities** (including the operation and maintenance of motor vehicles) **shall be provided by the school district for all the children residing within the school district to and from the school they legally attend**…The cost of providing such transportation between two or three miles, as the case may be, and fifteen miles shall be considered for the purposes of this chapter to be a charge upon the district and an ordinary contingent expense of the district...
> b.
> (i) School districts providing transportation to a nonpublic school for pupils living within a specified distance from such school shall designate one or more public schools as centralized pick-up points and shall provide transportation between such points and such nonpublic schools for students residing in the district who live too far from such nonpublic schools to qualify for transportation between home and school. The district shall not be responsible for the provision of transportation for pupils between their home and such pick-up points. The district may provide school bus transportation to a pupil if the residence of the pupil is located on an established route for the transportation of pupils to the centralized pick-up point provided such transportation does not result in additional costs to the district. The cost of providing transportation between such pick-up points and such nonpublic schools shall be an ordinary contingent expense.
> (ii) A board of education may, at its discretion, provide transportation for pupils residing within the district to a nonpublic school located more than fifteen miles from the home of any such pupil provided that such transportation has been provided to such

5

nonpublic school pursuant to this subdivision in at least one of the immediately preceding three school years and such transportation is provided from one or more centralized pick-up points designated pursuant to this paragraph and that the distance from such pick-up points to the nonpublic school is not more than fifteen miles. The district shall not be responsible for the provision of transportation for pupils between pupils homes and such pick-up points. The cost of providing transportation between such pick-up points and such nonpublic schools shall be an ordinary contingent expense.

c. The foregoing provisions of this subdivision shall not require transportation to be provided for children residing within a city school district, but if provided by such district pursuant to other provisions of this chapter, such transportation shall be offered equally to all such children in like circumstances…

**d.** Nothing contained in this subdivision, however, shall be deemed to require a school district to furnish transportation to a child directly to or from his or her home...

**2-a.** The superintendent of each city school district, in a **city having a population in excess of one million,** shall prepare a public school calendar and shall notify officials of nonpublic schools to which transportation has been requested not later than the first day of June in each year, of the days on which the public schools will be in session in the following school year. **Such school district which provides transportation to nonpublic schools shall provide such transportation for the same number of days as the public schools are open but shall not provide transportation services for more than one hundred eighty days.** Officials of each nonpublic school to which transportation is provided by a city school district of a city having a population in excess of one million may notify such district, not later than the first day of July of each school year, **of a maximum of five days,** exclusive of Saturdays, Sundays or legal holidays upon which public schools are required to be closed, **on which the public schools are scheduled to be closed, except** that in any year in which the first or last day of Passover and Easter Sunday are separated by more than seven days, **such officials may notify the district of a maximum of ten days, but such school district will be required to provide for transportation to such nonpublic school provided that such five or ten additional days, whichever is applicable, are limited to the following:** the Tuesday, Wednesday, Thursday and Friday after Labor Day, Rosh Hashanah, Yom Kippur, the week in which public schools are closed for spring recess, December twenty-fourth and the week between Christmas day and New Year's day, the Tuesday, Wednesday, Thursday and Friday after the observance of Washington's birthday, and, in the boroughs of Brooklyn and

6

Queens only, Anniversary Day as designated in <u>section twenty-five hundred eighty-six</u> of this chapter...

Defendants have focused their statutory interpretation of the scope of the Education Law § 3635 (1) (a) mandate, on the restrictions imposed under paragraph 2-a thereof. Defendant's focus is misplaced.

## STATUTORY INTERPRETATION

The Court notes that "where the constitutionality of an act may be rendered doubtful, the court will first ascertain whether a construction of the act is fairly possible by which the question may be avoided" (see McKinney's Statutes §150 (c)). Where, as here, such construction is readily permissible in this case, the Court need not determine the merit of Plaintiff's equal protection and freedom of religion constitutional claims under (NY Const. art I, § 11 and NY Const. art I, § 3, respectively; see also, <u>Everson v. Board of Education of the Township of Ewing</u>, 330 U.S. 1).

Generally, the underlying administrative interpretation of a statute is afforded great weight by the Court (see McKinney's Statutes §129; see also <u>Trump-Equitable Fifth Ave. Co. v. Gliedman</u>, 62 N.Y. 2d 539, 545 [1984]; <u>Kison v. Wilkie</u>, 139 S.Ct. 2400, 2405-2406 [2019]). Deference to an administrative interpretation is not required, however, when the issue at hand is one of statutory construction (see <u>Matter of Suffolk Regional Off-Track Betting Corp. v. New York State Racing & Wagering Bd.</u>, 11 N.Y.3d 559, 567 [2008], where the Court held,

"First and foremost, it is **our role to implement the intent of the Legislature. Deference to administrative agencies charged with enforcing a statute is not required when an issue is one of pure statutory analysis.** Even if no deference is owed to an agency's reading of a statute, a court can nevertheless defer to an

7

agency's definition of a term of art contained within a statute").
(emphasis added)

It is the Court's ultimate responsibility to interpret a statute, with full recognition of the

underlying legislative intent (See Matter of Academy v. New York State Educ. Dept., 169 A.D.

3d 1287, 1288 [3d Dept. 2019]; Rackmyer v. Gates-Chili Cent. School Dist., 48 A.D.2d 180, 183

[4th Dept. 1975], where the Court held,

> "While appeal to the **commissioner** is exclusive where the
> exercise of discretion is involved, where rights depend upon the
> **interpretation of a statute** which it is claimed the school board or
> an official has violated, **the courts will determine the matter**
> notwithstanding that another procedure for settling the controversy
> is available". (emphasis added)

; see also, Martin v. Brienger, 49 Misc. 2d 130, 133 [Sup. Ct. 1966], aff'd on op below 26 A.D.

2d 772 [1966], where the Court rejected the Education Commissioner's interpretation of

Education Law § 3635, finding,

> "The difficulty with such argument is that the **construction** placed
> on the phrase "nearest available parochial school" **is that of the**
> **Commissioner of Education and not of a Supreme Court,** and
> there is nothing in the Governor's memorandum which specifically
> adopts, confirms or approves the various interpretations placed
> upon said phrase by the Commissioner in the afore-mentioned
> cases…"). (emphasis added)

Where, as here, the text of the statute is clear, the Court must also give import to its plain

meaning (see People v. Aragon, 28 N.Y. 3d 125, 128 [2016]; People v. Ocasio, 28 N.Y. 3d 178,

181 [2016]; Morgenthau v. Avion Resources Ltd., 11 N.Y.3d 383, 389 [2008]); see Hernandez v

State of New York, 173 A.D.3d 105, 111 [3d Dept. 2019], where the Court held, inter alia:

> "It is a well-settled and basic tenet of constitutional and statutory
> interpretation that the clearest and most compelling indicator of the
> drafters intent is the **language itself**. [R]esort must be had to the
> natural signification of the words employed, and if they have a

8

[* 8]

definite meaning, which involves no absurdity or contradiction, there is no room for construction **and courts have no right to add to or take away from that meaning.** In other words, [w]hen th[e] language is clear and leads to no absurd conclusion, the words must be accorded their **plain and ordinary meaning.**" (internal quotations and citations omitted; emphasis added)

; Matter of North Gate Health Care Facility, LLC v. Zucker, 174 A.D. 3d 1202, 1202-1203 [3d Dept. 2019]).

Education Law § 3635 (1) (a) plainly states, "**Sufficient** transportation facilities…shall be provided by the school district for **all** the children residing within the school district **to and from the school they legally attend.**" (emphasis added) Once again, "All the children" means all the children, without regard to whether the school they attend is private or public. It is manifest that the phrase "Legally attend" means exactly what is says and necessarily includes both private and public schools (see Rackmyer v. Gates-Chili Cent. School Dist., supra. at 184, where the Court interpreted the terms of Education Law § 3635 (1) as "absolute"; Martin v. Brienger, supra. at 133, where the Court held, inter alia: "The court is of the view that the statute means exactly what it says").

Paragraph 1 (a) of the statute does not expressly impose any other restriction, and certainly does not condition the obligation to provide transportation to nonpublic schools on the public schools also being open; such omission is meaningful and evinces a legislative intent not to limit the express terms thereof (see, Hernandez v State of New York, supra. at 112, where the Court held the absence of any restriction was meaningful, stating,

> "the **choice to use the broad and expansive word "employees"** in NY Constitution, article I, § 17, **without qualification or restriction, was a deliberate one** that was meant to afford the constitutional right to organize and collectively bargain to any person who fits within the plain and ordinary meaning of that word. Indeed, there is **nothing in the language of the**

9

**constitutional provision to support the suggestion that the drafters intended for the term "employees" to be narrowed or limited in any way.")** (emphasis added)

It is not the Court's function to expand upon or restrict the statutory mandate (see Commonwealth of the N. Mariana Is. v. Canadian Imperial Bank of Commerce, 21 N.Y.3d 55, 62 [2013], where the Court held, "we cannot read into the statute that which was specifically omitted by the legislature"; Matter of Ronell W. v. Nancy G., 121 A.D.3d 912 [2d Dept. 2014]).

In O'Donnell v. Antin, 81 Misc. 2d 849 [Sup. Ct. 1974], aff'd on op below 36 N.Y. 2d 941 [1975], the Court upheld the district's determination not to provide bus transportation to children who lived in the district but attended private school outside of the district. In so doing, the Court found **"defendant board continues to bus all children to all schools within the district, regardless of affiliation."** (id.at 850) (emphasis added). (see also, Charter Sch. for Applied Tech. v Board of Educ. for City Sch. Dist. of City of Buffalo, 105 A.D.3d 1460 [4th Dept. 2013], where the Court held, "It is undisputed, however, that CSAT is located outside the District, and "students attending school outside the [D]istrict are not 'in like circumstances' with students attending school within the [D]istrict"). Here, as distinguished, it is manifest that Plaintiff's live and attend schools in the district, but the transportation presently provided by Defendants varies because of affiliation with private, as distinct from public schools.

Defendants assert that the SED's guidance and District policy are consistent with the legislative history. In 1985, Education Law § 3635 was amended, adding paragraph 2-a to designate between 5 and 10 transportation days for nonpublic schools when public schools were scheduled to be closed in cities with a population more than one million people. The legislative history clearly indicated that New York City public schools were not, in practice, providing

10

[* 10]

transportation unless they were open.[7] The statutory language of paragraph 2 -a, includes the following phrases, "of a **maximum**", "are **limited** to the following", and "**shall not provide transportation services for more than one hundred eighty days**". (emphasis added) This language indicates that the designation of 5-10 transportation days for nonpublic schools was an addition to the New York City practice of only providing transportation on days when the public schools were open. While no such limiting language exists under paragraph 1 (a), which is applicable to this district, Defendants cite the legislative history that a 2-day designation for transportation to non-public schools when public schools were closed for all other districts, was initially proposed in 1985 but eliminated from the legislation.[8] Defendants assert that such history necessitates the statute be interpreted to require transportation only on days when the public schools are open. The plain text of the statute, however, contains no such limitation. Moreover, there is no showing that the legislature's intent in 1985 when it amended the statute to add paragraph 2-a, was the same as the legislative intent at the time paragraph (1) (a) was initially enacted in 1939 as more fully appears below (see Matter of Avella v City of New York, 29 N.Y.3d 425, 437 [2017], where the court held, "that the legislature used different words in 2005 does not shed any real light on what the 1961 legislature meant").

Does the cited legislative history from 1985 take precedence over the plain statutory text? It does not (see Matter of Avella v City of New York, supra. at 437, where the court held,

> "The **plain language of the statute** does not authorize the proposed construction, **and we therefore need not consider the legislative history**.") (emphasis added)

---

[7] NYSEF Doc. No. 38; NYSEF Doc. No. 132 ¶ 9.
[8] NYSEF Doc. No. 132 ¶ 12 -13.

[* 11]

; <u>Hinton v Village of Pulaski</u>, 33 N.Y.3d 931 [2019], where the Court held,

> "Where, as here, **the legislative language is clear, we have no occasion to examine extrinsic evidence to discover legislative intent**"). (emphasis added)

: <u>Makinen v City of New York</u>, 30 N.Y.3d 81, 85 [2017], where the Court held,

> "[w]here [, as here,] the legislative language is clear, [we have] **no occasion [to] examin[e] . . . extrinsic evidence to discover legislative intent**" (McKinney's Cons Laws of NY, Book 1, Statutes § 120, Comment at 242).

; <u>Davila v State of New York</u>, 183 A.D.3d 1164, 1167 [3d Dept. 2020], where the Court held,

> Where, as here, "the disputed [statutory] language is unambiguous, we are bound to give effect to its plain meaning," and, inasmuch as **"the legislative language is clear, we have no occasion to examine extrinsic evidence to discover legislative intent"**). (emphasis added)

The point made is that the legislature did not amend paragraph 1 (a) in 1985, and its continuing plain language is neither subject to, nor defeated by the cited legislative history.

While the Court need not resort to a review of the legislative history to determine the Legislature's intent, a review of the primary legislative history, encompassing the 1938 Constitutional amendment and its implementing legislation in 1939, demonstrates that paragraph 1 (a) must be interpreted in accord with the plain meaning of its text.

In 1938 the constitution was amended to add NY Const art XI, § 3, which provides, inter alia:

> **"…the legislature may provide for the transportation of children to and from any school or institution of learning."** (emphasis added)[9]

---

[9] At that time, it was NY Const. art XI § 4, and has been renumbered since.

12

The constitutional amendment was implemented by the passage of the Coudert-McCreery bill of 1939 (Laws of 1939, Ch. 465), to provide transportation for private, as well as public schools. In relevant part, the 1939 legislation included the following, to wit:

> "In providing or granting transportation for children pursuant to the provisions of this chapter, **sufficient transportation facilities** (including the operation and maintenance of motor vehicles) **shall be provided for all children residing within the school district to and from the school they legally attend..."** (emphasis added)[10]

There is nothing in the 1939 Bill Jacket Collection which made transportation to private shools contingent upon public schools being open. That essential text remains intact to date in Education Law § 3635 (1) (a).

The next primary amendment came with the passage of the Speno-Brennan Bill in 1960 (l. 1960, Ch. 1074). This legislation included the foregoing basic transportation mandate but added specific requirements to define and limit the minimum and maximum transportation distances. Upon approval of the legislation, then Governor Nelson A. Rockefeller issued a Memorandum stating, inter alia: "The law requires that children attending private schools be afforded transportation on a **parity** with public school pupils."[11] (emphasis added) The Memorandum accompanying the Senate Bill provided,

---

[10] As enacted, this text appeared initially appeared in Education Law Article 18, § 503. The Education law went through a procedural revision and its provisions were renumbered (Laws 1947, Ch. 820).
[11] See L. 1960 Ch.1074, Bill Jacket Collection p.225-226/257.

13

"The law requires that children attending private school be afforded transportation on a **parity** with public school…[and]…such transportation must be furnished equally to all children residing in the district **attending both public and non-public schools.** The law presently provides transportation benefits for children **to the school which they legally attend."** (internal quotations omitted; emphasis added)[12]

(see also, Board of Education v. Allen, 20 N.Y.2d 109, 117 [1967], where the Court held,

"At a time when we have large-scale Federal and State aid to education, it is justly feared that children who are denied these benefits may receive education inferior to children in public schools. Unless certain types of aid can be made available to *all* children, we run the risk of creating an educational lag between children in public and private schools."

; Application of Board of Education, 199 Misc. 631 [Sup. Ct. 1961]). The point made is that the primary legislative history (i.e., 1938 constitutional amendment, implementation thereof in 1939, as well as the 1960 amendment) does evidence a legislative intent that the obligation to provide transportation to private school students within the District stands as an independent mandate and is not dependent upon the public schools being open.

Defendant SED claims that Education Law § 3635 requires the District to provide "sufficient transportation", citing the dictionary to assert that sufficient means adequate.[13] It appears the argument is made to support Defendant's assertion that providing transportation on only those days public schools are open is sufficient! Defendants have, however, misrepresented the statute's text. The statute mandates the provision of "Sufficient transportation **facilities (including the operation and maintenance of motor vehicles)."** (emphasis added) This directive speaks to the means, not the scope, of the transportation mandate to provide

---

[12] See L. 1960 Ch.1074, Bill Jacket Collection p. 231-232/257.
[13] NYSEF Doc. No. 131 Pinsonnault Aff ¶ 11.

14

transportation "for all the children residing within the school district to and from the school they legally attend." (Education Law § 3635 (1) (a))

Defendant SED asserts it "does not read Education Law § 3635 as entitling nonpublic students to more transportation than public school students."[14] Such statement fails to account for the number of days that public schools are open, and non-public schools are closed. Yet, it is true that Education Law § 3635 makes no such distinction, but it is a distinction without a difference. As aforementioned, Education Law § 3635 (1) (a) mandates transportation "for all the children residing within the school district to and from the school they legally attend," and the attendance at nonpublic school is lawful, regardless of whether the public schools are open.

## CONCLUSION

Accordingly, Defendant SED's cross-motion for summary judgment is denied, and Plaintiff's motion for summary judgment is Granted, and it is further,

ORDERED, ADJUDGED AND DECREED, that Education Law § 3635(1) requires the Washingtonville Central School District to provide transportation to all nonpublic school students on all days when their nonpublic schools are open for instruction, regardless of whether the public schools are open, and it is further

ORDERED, ADJUDGED AND DECREED, that the Washingtonville Central School District be and hereby is directed to provide transportation to all nonpublic school students on all days that the nonpublic schools are open for instruction, as required by Education Law § 3635(1), and it is further

---

[14] NYSEF Doc. No. 132 ¶ 14.

15

ORDERED, ADJUDGED AND DECREED, that the Washingtonville Central School District is in violation of Education Law § 3635(1) by refusing to provide transportation to nonpublic school students on all days when the nonpublic schools are open for instruction, and it is further

ORDERED, ADJUDGED AND DECREED, the State Education Department's guidance on transportation for nonpublic school students to the extent that it states transportation is required only on those days when public schools are open is null and void, on the grounds that it violates Education Law § 3635 (1); and it is further

ORDERED, ADJUDGED AND DECREED, that the Washingtonville Central School District is permanently enjoined from denying transportation to any nonpublic school students on all days that their nonpublic schools are open for instruction; and it is further,

ORDERED, ADJUDGED AND DECREED, that Plaintiff's claim for an award of monetary damages and attorney fees is denied.

This memorandum constitutes both the decision, order and judgment of the Court.[15]

Dated: Albany, New York
November 18, 2021

_____
PETER A. LYNCH, J.S.C.

11/18/2021

---

[15] Notice of Entry and service in accord with CPLR R 2220 is required.

16

PAPERS CONSIDERED:

All e-filed pleadings, with exhibits.


To:    WHITEMAN OSTERMAN & HANNA LLP
By: Robert S. Rosborough IV and Hilda M. Curtin
Attorneys for Petitioners-Plaintiffs
One Commerce Plaza
Albany, New York 12260

Mark C. Rushfield, Esq.
Shaw, Perelson, May & Lambert, LLP
Attorneys for Defendant-Respondent
Washingtonville Central School District
21 Van Wagner Road
Poughkeepsie, New York 12603

Letitia James, New York Attorney General
By: Erik Pinsonnault, Assistant Attorney General
Attorney for Defendant SED
The Capitol
Albany, New York 12224-0341

17

[* 17]