Matter of United Jewish Community of Blooming Grove, Inc. v Washingtonville Cent. Sch. Dist. (2024 NY Slip Op 03377)

Matter of United Jewish Community of Blooming Grove, Inc. v Washingtonville Cent. Sch. Dist.

2024 NY Slip Op 03377 [42 NY3d 348]

June 20, 2024

Garcia, J.

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, November 27, 2024

[*1]

In the Matter of United Jewish Community of Blooming Grove, Inc., et al., Appellants,
v
Washingtonville Central School District et al., Respondents.

Argued May 15, 2024; decided June 20, 2024

Matter of United Jewish Community of Blooming Grove, Inc. v Washingtonville Cent. Sch. Dist., 207 AD3d 9, affirmed.

{**42 NY3d at 353} OPINION OF THE COURT

Garcia, J.

Petitioners, including parents with children in nonpublic schools, seek to compel the local school district to transport children to their private schools on days when the public schools are closed. We hold that Education Law § 3635 (1) (a) does not require school districts to provide such transportation and therefore affirm.
I.
Petitioners United Jewish Community of Blooming Grove, Inc., Joel Stern, and Yitzchok Ekstein requested that respondent Washingtonville Central School District (District) provide transportation for children attending nonpublic schools on days public schools are closed, identifying 20 such days. The District denied those requests based on its policy that "[t]he District is not required to provide transportation to nonpublic schools on days on which the District[']s schools are not in session." That policy is consistent with guidance published by respondent State Education Department (SED) at least since 1992 and consistently maintained since that time (see 1992 SED Transportation Supervisor's Handbook, ch 11 [B] [11]; New York State Education Department, Transportation for Students Enrolled in Nonpublic Schools, https://www.p12.nysed.gov/nonpub/handbook onservices/transportation.html [accessed May 22, 2024]). Petitioners then commenced this hybrid CPLR article 78 proceeding and declaratory judgment action, seeking a declaration that the District must transport students to nonpublic schools on all [*2]days those schools are open and that SED's contrary guidance is invalid, as well as a permanent injunction compelling the District to provide such transportation.
Supreme Court concluded that the language of Education Law § 3635 (1) (a) required the District to transport nonpublic school students on all days their schools were open and that the legislative history could not be used to counter the plain meaning of the statute (see 2021 NY Slip Op 34140[U] [Sup Ct, Albany County 2021]). Accordingly, the court granted petitioners' motion for summary judgment on their request for declaratory{**42 NY3d at 354} relief, issued a permanent injunction, and denied SED's cross-motion for summary judgment.
The Appellate Division reversed, denying petitioners' request for summary judgment, granting respondent SED's cross-motion for summary judgment, declaring SED's guidance valid, and declaring that the District is not required to provide transportation on days the public schools are closed (see 207 AD3d 9, 16-17 [3d Dept 2022]). After determining that the language in Education Law § 3635 (1) (a) was ambiguous, that Court reviewed the provision's legislative history and held that the law "permits, but does not require, school districts outside New York City to transport nonpublic school students to and from school on days when the public schools are closed" (id. at 15). This Court granted leave to appeal (see 39 NY3d 905 [2022]).
II.
Education Law § 3635 (1) (a) provides:
"Sufficient transportation facilities (including the operation and maintenance of motor vehicles) shall be provided by the school district for all the children residing within the school district to and from the school they legally attend, who are in need of such transportation because of the remoteness of the school to the child or for the promotion of the best interest of such children."
The issue on appeal is whether by requiring that school districts provide "[s]ufficient" transportation, the statute obligates school districts to afford nonpublic students transportation on days their schools are in session, including days when public schools are closed. We conclude it does not.
In interpreting the statute, our " 'primary consideration is to ascertain and give effect to the intention of the Legislature' " (Matter of Walsh v New York State Comptroller, 34 NY3d 520, 524 [2019], quoting Nadkos, Inc. v Preferred Contrs. Ins. Co. Risk Retention Group LLC, 34 NY3d 1, 7 [2019]). "As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself" (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]). Here, the phrase "[s]ufficient transportation facilities" is ambiguous and could be interpreted in a number of ways, including requiring transportation on each day nonpublic schools are open or only on days the public{**42 NY3d at 355} schools are open. Resort to dictionary definitions, while at times helpful (see People v Holz, 35 NY3d 55, 59 [2020]), is unavailing here. For example, Black's Law Dictionary defines "sufficient" as "[a]dequate; of such quality, number, force, or value as is necessary for a given purpose" (Black's Law Dictionary [11th ed 2019], sufficient). "Adequate" is no less vague than "sufficient." Therefore, to aid us in ascertaining the Legislature's intent, we turn first to the history of the statutory language.
The role of public funding for education in New York is a concept that goes back to the early days of statehood, first expressed in a 1795 statute appropriating funds " 'for the purpose of encouraging and maintaining schools in the several cities and towns in this State' " (Judd v Board of Educ., 278 NY 200, 206 [1938], quoting L 1795, ch 75). Subsequent legislation established the "common school system" of the State by authorizing the creation of school districts and vesting control of those districts in various state and local officials (see id., citing L 1812, ch 242; see also L 1819, chs 161, 212). In 1821, a provision was added to the State Constitution to establish "a perpetual fund; the interest of which shall be inviolably appropriated and applied to the support of common schools throughout this state" (1821 NY Const, art VII, § 10). The substance of that provision was readopted in 1846 (see 1846 NY Const, art IX, § 1 ["The revenues of the said common-school fund shall be applied to the support of common schools"]) and in 1894 (see 1894 NY Const, art IX, § 3 [same]). "The State thus organized a secular common school system of education throughout the State and supports it by public funds" (Judd, 278 NY at 207; 3 Charles Z. Lincoln, The Constitutional History of New York at 555 [1905] [Education Article requires "not simply schools, but a system; not merely that they shall be common, but free, and not only that they shall be numerous, but that they shall be sufficient in number, so that all the children of the state may, unless otherwise provided for, receive in them their education"]). These schools are free for all to attend and are supported by a combination of local taxation and the [*3]common fund (see Judd, 278 NY at 207; see also Campaign for Fiscal Equity v State of New York, 100 NY2d 893, 940 [2003, Smith, J., concurring]).
The Constitution of 1894 added the following provision restricting the use of public funds exclusively to the "common schools":
{**42 NY3d at 356}"Neither the State nor any subdivision thereof, shall use its property or credit or any public money, or authorize or permit either to be used, directly or indirectly, in aid or maintenance, other than for examination or inspection, of any school or institution of learning wholly or in part under the control or direction of any religious denomination, or in which any denominational tenet or doctrine is taught" (see 1894 NY Const, art IX, § 4; see Judd, 278 NY at 207-208).
This provision is a broad mandate proscribing direct or indirect aid to private or parochial schools (see Judd, 278 NY at 211-212).
In 1935, despite the constitutional funding restriction, the Legislature passed a bill requiring that "where children who attend any school other than a public school, reside on or along the highway constituting the regular route of a school bus or conveyance provided by a school district for transporting pupils to and from the public schools," those nonpublic school children shall receive transportation "without extra charge" (1935 NY Senate Bill S1182, § 1). The Governor vetoed the bill, concluding that it constituted "a radical departure from the public policy of the State" and expressing concern that it might violate "the strict language of Section 4 of Article IX of the Constitution" (Governor's Mem Vetoing 1935 NY Senate Bill S1182 at 1, Veto Jacket, Veto 106 of 1935).
In 1936, a similar law (1936 Law) did pass, which provided in part that "[w]henever conveyance of pupils shall be so provided for by vote of the inhabitants, the school district and the school trustees shall provide, if need be, one or more routes so that all children of school age in said district shall equally be afforded transportation facilities" (L 1936, ch 541, § 1). The Commissioner of Education interpreted the 1936 Law to require that "if free transportation should be provided for pupils who attended the free common schools, similar transportation facilities must be provided for all pupils similarly situated who were attending private and parochial schools" (Judd, 278 NY at 204-205).
The Governor's 1935 veto message proved prophetic when, in May of 1938, this Court overturned the 1936 Law on constitutional grounds, holding that
"in so far as it authorizes the use of public funds{**42 NY3d at 357} for transportation of pupils to and from any school or institution of learning wholly or in part under the control or direction of any religious denomination or in which any denominational tenet or doctrine is taught, [the 1936 Law] is repugnant to our fundamental law, unconstitutional and void" (id. at 217).
[*4]Proponents of public funding for transporting nonpublic school pupils turned to the ongoing 1938 constitutional convention for relief. Action was quickly taken to propose an amendment to article IX, § 4 which, although retaining the existing language prohibiting aid to denominational schools, now allowed that "the legislature may provide for the transportation of children to and from any school or institution of learning" (1938 NY Const, art XI, § 4 [emphasis added]; see 2 Rev Rec, 1938 NY Constitutional Convention at 1056 [Chairman of the Committee of Education at the 1938 convention reported that the added language "meets the ruling of the Court of Appeals in the Judd case and allows the use of public money therein held void"]). The people of the State adopted that amendment in November 1938. The Legislature acted on this authority the following year by passing a law requiring that districts provide sufficient transportation facilities to all students residing within the district, to and from the schools which they legally attend (see L 1939, ch 465, § 5; Education Law § 3635 [1] [a]).
In sum, New York had a long history of prohibiting public funding of nonpublic schools (see Judd, 278 NY at 208-210). Rather than mandate any such funding, the 1938 amendment removed a constitutional barrier, so that the Legislature—if it chose—could provide transportation to nonpublic school students. Against this backdrop, we consider the history of the changes made to the 1939 statute after enactment.
The phrase "[s]ufficient transportation facilities" remains unchanged in Education Law § 3635 (1) (a); however, the language of section 3635 as a whole and the legislative history of its amendments provide clear guidance in ascertaining the intended meaning of that phrase (see Heard v Cuomo, 80 NY2d 684, 689 [1993] ["Every part of a statute must be given meaning and effect, and the various parts of a statute must be construed so as to harmonize with one another" (citations omitted)]; Matter of Estate of Youngjohn v Berry Plastics Corp., 36 NY3d 595, 604 [2021] ["amendments should typically be construed together with the original act"]).
[*5]
{**42 NY3d at 358}Certain amendments to section 3635 were aimed at distinguishing the transportation obligations of the various categories of school districts. Public schools in New York are organized as common school districts (Education Law art 33), union free districts (id. art 35), central school districts (id. art 37 [collectively "central school districts"]) or as city school districts (id. arts 51, 52 [divided by population]). In 1960 the Legislature amended Education Law § 3635 (1) (a) to include mileage limits within which transportation must be provided and to authorize districts to vote to provide transportation to children who live outside those mileage limits (L 1960, ch 1074). The proposed amendment was criticized for requiring city school districts to provide transportation for students (see Governor's Approval Mem, Bill Jacket, L 1960, ch 1074 at 224-225) when those districts had not previously been required to do so (see Budget Rep on Bills, Bill Jacket, L 1961, ch 959 at 12 [the amended law "would require city school districts to provide transportation, although such districts receive no state aid for transportation and have always been considered exempt from the requirement"]). The following year, the Legislature amended the Education Law to make clear that "[t]he foregoing provisions of this subdivision shall not require transportation to be provided for children residing within a city school district, but if provided by such district pursuant to other provisions of this chapter, such transportation shall be offered equally to all such children in like circumstances" (L 1961, ch 959, § 1 [emphasis added]; see Education Law § 3635 [1] [c]). As a result of these amendments made in the early 1960s, central school districts were required to provide "[s]ufficient" transportation to public and nonpublic school students and city school districts were not required to do so, but could opt in and incur the obligation to provide such transportation "equally" (see New York State Education Department, Religious and Independent School Support: Transportation, https://www.nysed.gov/nonpublic-schools/transportation [accessed May 22, 2024] ["If transportation is provided, it must be provided equally to all pupils in like circumstances, those attending both public and religious/independent schools"]).
Twenty years later, the Legislature began to consider amendments that would have required that "[e]ach school district shall provide bus service for children attending non-public schools when such non-public schools are in session and the public schools of the district are not in session" (1981 NY Senate {**42 NY3d at 359}Bill S68). However, a concern was raised that the 1981 bill contained no express limitations on days for which nonpublic schools could request transportation, and the bill did not pass (see NY Senate Debate on 1981 NY Senate Bill S68-A, Jan. 25, 1982 at 134; see also 1981 NY Senate Bill S68). Two years later, the Legislature considered another bill which would have required New York City to provide up to five days of transportation to nonpublic schools when public schools were closed (see 1983 NY Senate Bill S4989). That bill also failed to pass.
In 1985, the Legislature considered a proposed amendment which would have required New York City to offer five alternative days of transportation to nonpublic school students and non-New York City districts to offer two alternative days of transportation (see State Educ Dept Mem in Support, Bill Jacket, L 1985, ch 902 at 6 ["A similar provision is included for other school districts, but is limited to a maximum of two alternative days, because of the necessity of special transportation arrangements in rural school districts"]). Letters in opposition to this proposal maintained that even those two days would be overly burdensome (see NY State School Bds Assn Mem in Opp, Bill Jacket, L 1985, ch 902 at 24 [calling attention to Guilderland Central School District which—at the time—transported students to 33 nonpublic schools and arguing that "the potential of 66 (additional) transportation days would result in an excessive fiscal and administrative burden"]).
Prior to passage, the Legislature removed the language requiring that non-New York City districts offer two alternative days of transportation to nonpublic schools and included only the provision that required New York City to provide five alternative days (see State Educ Dept Letter, Bill Jacket, L 1985, ch 902 at 18 ["The amended version of the bill deleted a provision for transportation on alternative days in school districts with a population of less than one million"]). As enacted subdivision (2-a) requires:
"Such school district [in a city having a population in excess of one million] which provides transportation to nonpublic schools shall provide such transportation for the same number of days as the public schools are open but shall not provide transportation services for more than one hundred eighty days. Officials of each nonpublic school to{**42 NY3d at 360} which transportation is provided by a city school district of a city having a population in excess of one million may notify such district, not later than the first day of July of each school year, of a maximum of five days, . . . , on which the public schools are scheduled to be closed, . . . , but such school district will be required to provide for transportation to such nonpublic school" (Education Law § 3635 [2-a]).
[*6]
Nonpublic schools may designate alternative days of transportation from a list of options, including "the Wednesday, Thursday and Friday after Labor Day, Rosh Hashannah, Yom Kippur and the week between Christmas day and New Year's day" (L 1985, ch 902, § 1).[FN1] Before subdivision (2-a) became law, transportation of nonpublic school students was not required on days when the public schools were closed, notwithstanding that the City was required to offer transportation "equally to all such children in like circumstances" (see Education Law § 3635 [1] [c]). Clearly, the Legislature was acting to impose an additional requirement on New York City.
The exclusion of the two-day transportation requirement from the enacted law demonstrates the Legislature's intent not to require central school districts to transport nonpublic school students on days the public schools are closed.[FN2] Characterizing this drafting history—as petitioners do—as mere legislative inaction is inaccurate. It is well-established that "[a] court is at liberty, also, to invoke, as an aid in construction, the history of{**42 NY3d at 361} the passage of a statute, that is, the changes and proposed changes in the original bill" (Woollcott v Shubert, 217 NY 212, 221 [1916]; see Majewski, 91 NY2d at 587 ["A court may examine changes made in proposed legislation to determine intent"]). Rejection of language that would have required school districts outside New York City to transport students to private schools on days the public schools were not open makes clear that "[s]ufficient transportation facilities" (Education Law § 3635 [1] [a]) does not include this obligation.
Where the Legislature provided for transportation for nonpublic school students on days where the public schools were closed, it did so explicitly and with limitations. Subdivision (2-a) limited nonpublic schools to 180 days of transportation and exempted Sundays, in addition to the preexisting exemptions for Saturdays and legal holidays (see Education Law § 3604 [8] [schools may not operate on Saturdays or most legal holidays]). It also limited the possible alternative transportation days to a preselected list rather than allowing a nonpublic school to request transportation on any day it is legally in session, and provided procedures and timelines for coordination between public and nonpublic schools.
An interpretation by this Court of section 3635 (1) (a) as a simple mandate that school districts provide transportation to nonpublic schools on days those schools choose to open except Saturdays and most legal holidays (see id. § 3604 [8]) would significantly increase the financial and administrative burdens on school districts. Even if nonpublic schools were somehow limited to 180 total days of transportation to maintain approximate parity with public schools (see id. § 3604 [7] [denying public schools funding unless they can show that they were in session "for not less than one hundred eighty days"]), nothing in the language of the statute would require them to adhere to the summer holiday observed by public schools or prevent them from instituting a calendar that diverges significantly from the public-school calendar. Here, petitioners request transportation on 20 days when public schools are closed. That request far exceeds the 1985 proposal that non-New York City districts provide a maximum of two alternative days—a far more modest proposal that was still criticized as overly burdensome (see NY State School Bds Assn Mem in Opp, Bill Jacket, L 1985, ch 902 at 24). Nor can we introduce limitations unmoored from the text of [*7]the statute (see People v Dietze, 75 NY2d 47, 53 [1989]). Rather, those policy choices, with{**42 NY3d at 362} the accompanying financial consequences, must be left to the Legislature. As the law now stands, school districts outside New York City are not required to provide transportation on days that public schools are closed.
III.
Petitioners' remaining arguments are without merit. First, they contend that the District's policy and SED's interpretation of Education Law § 3635 (1) (a) deny nonpublic school students equal protection of the law (see NY Const, art I, § 11). Where government action treats groups differently but "a suspect class or fundamental right is not implicated, the government action need only be rationally related to a legitimate governmental purpose" (People v Aviles, 28 NY3d 497, 502 [2016]). Here, no suspect class or fundamental right is implicated, and the administrative and financial burdens on the State provide a rational basis for the decision to only transport nonpublic school students on days the public schools are open.
Next, petitioners contend that SED exceeded its statutory authority under Education Law § 3635 (1) (a) and that its guidance runs afoul of the State Administrative Procedure Act because it was not subject to that statute's rulemaking procedures (see State Administrative Procedure Act § 202 [1] [a]). However, the rulemaking procedure does not apply to "interpretive statements and statements of general policy which in themselves have no legal effect but are merely explanatory" (State Administrative Procedure Act § 102 [2] [b] [iv]; see also Cubas v Martinez, 8 NY3d 611, 621 [2007]). Here, the SED guidance merely interprets Education Law § 3635—it imposes no additional obligations or duties and has no independent legal effect. Similarly, SED's guidance does not run afoul of the separation of powers doctrine.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wilson and Judges Rivera, Singas, Cannataro, Troutman and Halligan concur.
Order affirmed, with costs.

Footnotes

Footnote 1: Subsequent amendments to that provision allowed for 10 alternative days of transportation in certain years (see L 1997, ch 34) and expanded the possible list of alternative days to include Christmas Eve, the days following the observance of Washington's birthday, and in Brooklyn and Queens, Anniversary Day (see L 2005, ch 424).

Footnote 2: Years later—in 1999 and again in 2001—the Legislature considered but failed to vote on two bills which would have amended Education Law § 3635 to require school districts outside New York City to transport nonpublic school students on days when public schools were closed—including Saturdays and holidays—if voters in the district authorized such transportation (see 1999 NY Assembly Bill A7382C; 2001 NY Assembly Bill A150). This continued inaction in the face of the 1992 SED interpretation of the statute (Assembly Mem in Support, 1999 NY Assembly Bill A7382C ["school districts may—but are not required to—provide transportation for non-public school children on days that the public schools are closed"]) indicates that the Legislature accepted that interpretation (see Engle v Talarico, 33 NY2d 237, 242 [1973] ["Where the practical construction of a statute is well known, the Legislature is charged with knowledge and its failure to interfere indicates acquiescence"]).